IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LAURIE DE LA GARZA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 7:19-cv-416 |
| REGENCY INTEGRATED HEALTH SERVICES, LLC, | § § § § | |
| Defendant. | § | |

## PLAINTIFF LAURIE DE LA GARZA'S ORIGINAL COMPLAINT AND JURY DEMAND

For her Original Complaint against Defendant Regency Integrated Health Services, LLC, Plaintiff Laurie De La Garza shows the following:

### Parties

1. Plaintiff Laurie De La Garza is an individual residing at 2007 Clavel Dr, Mission, Texas 78573. She may be served with papers through the undersigned counsel.

2. Defendant Regency Integrated Health Services, LLC is a foreign limited liability company organized under the laws of the State of Delaware. According to records on file with the Texas Secretary of State, Defendant maintains its principal place of business at 1422 Clarkview Road, Baltimore, MD 21209. It may be served with process through its registered agent, TRAC – The Registered Agent Company at 815 Brazos Street, Ste. 500, Austin, Texas 78701.

### Jurisdiction and Venue

3. The Court possesses personal jurisdiction over Defendant because it is registered to do business in Texas and because it actively conducts business in Texas. The Court possesses

subject-matter jurisdiction over this case because Plaintiff's claims arise under a federal statute, the Family and Medical Leave Act.

4. Venue is proper in the Southern District of Texas because all of the events giving rise to Plaintiff's claims occurred within the confines of the McAllen Division of the Southern District of Texas.

**Factual Background**

5. According to its website, Defendant Regency Integrated Health Services, LLC is a "dependable and trustworthy management company for 57 skilled nursing and rehabilitation centers across Texas."

6. Defendant operates Edinburg Nursing and Rehabilitation Center located at 5215 S. Sugar Road, Edinburg, Texas 78539. Plaintiff was hired to work as the Assistant Director of Nurses on or about November 27, 2017.

7. Plaintiff learned she was pregnant in mid-April 2019. Shortly thereafter, Plaintiff notified Defendant's Administrator, Nora Weaver, and Defendant's Director, Sandra Hernandez of the pregnancy. When Plaintiff notified them of her pregnancy, Weaver asked, "Well, are you going to continue to work here?" Plaintiff adamantly replied yes. Plaintiff told Weaver that she wanted to work for Defendant up until the last possible moment, after which she would take a pregnancy leave and then return to work.

8. From April to September 2019, Plaintiff had no issues with her pregnancy or at the workplace.

9. On or about September 20, 2019, Plaintiff went to see her Obstetrician-Gynecologist, Dr. Cesar Coronado, due to stomach cramps. The appointment did not interfere with her work with Defendant. Dr. Coronado told Plaintiff that she was in the midst of a critical

stage of her pregnancy now that she was at the six month mark when her baby's lungs were developing. Dr. Coronado advised Plaintiff to rest for approximately four weeks during this critical time of development. Dr. Coronado and Plaintiff anticipated that she would be released to return to work after the four weeks of rest.

10. Following Plaintiff's appointment that same day, Plaintiff went to work to notify Weaver and Hernandez that her doctor was taking her off of work for the next four weeks. Plaintiff was then sent to Human Resources to speak with Christina Lugo.

11. Lugo (HR) provided Plaintiff with paperwork for her doctor to fill out. Plaintiff took the paperwork to Dr. Coronado, then returned the executed paperwork back to HR in a timely manner. The paperwork was ultimately approved.

12. While Plaintiff was off from work, Weaver reached out to Plaintiff on a weekly basis asking when Plaintiff would be returning. Each time, Plaintiff told Weaver that, per her doctor's orders, she expected to return to work after the four weeks of rest.

13. On or about October 18, 2019, Plaintiff went to work to obtain short-term disability paperwork from HR. During the visit, Plaintiff also spoke with Weaver and Hernandez. Plaintiff notified them that she would be returning to work on October 29. Management did not give her any reason to believe that this would be a problem.

14. On or about October 23, 2019, Plaintiff went to Dr. Coronado for a follow up appointment. After the routine visit, another follow up appointment was scheduled for October 28—the day before Plaintiff was due to return to work. Dr. Coronado advised Plaintiff that everything looked okay and that Plaintiff would likely receive her release to return to work at the October 28 visit. Plaintiff spoke with Weaver after the appointment and told her that everything

was going as planned so that she could return to work October 29. Plaintiff was given no reason to believe that this would be a problem.

15. After Plaintiff's October 28 appointment with Dr. Coronado, Plaintiff was released to return to work the following day. Plaintiff immediately sent her release to Lugo (HR), and confirmed that she was released to go back to work. However, Plaintiff never received a response from Lugo.

16. On October 29, Plaintiff returned to work as planned. Hernandez was genuinely surprised to see Plaintiff. When Hernandez asked Plaintiff why she was at work, Plaintiff told her that she had been released. Hernandez responded, "Well, let's see what HR says about this."

17. Before Plaintiff met with Hernandez, Weaver, and Lugo, Weaver pulled Plaintiff into her office. Weaver asked Plaintiff if she only wanted to come back to work for financial reasons and for medical insurance. Plaintiff told Weaver that of course, she needed her job and her medical insurance, but that she also genuinely wanted to continue working. After Plaintiff said this, Weaver raised concerns about Plaintiff's restrictions. Plaintiff noted that she had been on these restrictions since April 2019 and that it had not been an issue. Indeed, these restrictions did not prohibit Plaintiff from performing her job duties. Plaintiff then asked if she needed to call her doctor so she could have the restrictions lifted. However, Weaver said not since Plaintiff was "already a liability" due to her pregnancy and that Defendant did not want to be liable if something happened to her.

18. Shortly after meeting with Weaver, Plaintiff was called into a meeting with Hernandez, Weaver, and Lugo. Weaver then told Plaintiff that Defendant no longer had a job for her and that she had been replaced. Plaintiff was confused by this since Weaver herself had continually asked Plaintiff when she would be returning to work while she was out on leave.

Weaver told Plaintiff that she had been replaced while she was out on leave. Weaver also raised concerns regarding Plaintiff's lifting restrictions. Plaintiff questioned this since she had a desk job and lifting was not an essential function. Weaver responded, "Well, you're so pregnant. Shouldn't you spend the rest of your pregnancy at home?" Weaver then told Plaintiff she was free to reapply, or at the very least Defendant would let her know if a new position opened up. With that, Plaintiff was discharged from employment. Plaintiff has yet to hear from Defendant.

### Cause of Action: Violation of the Family and Medical Leave Act

19. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 18 supra.

20. Defendant operates nursing and rehabilitation centers across Texas. Defendant is a covered employer under the FMLA because, during the relevant time periods, it employed more than 50 employees within a 75-mile radius of the site where Plaintiff worked. On November 27, 2017, Plaintiff commenced work for Defendant and worked continuously thereafter on a full-time basis. Plaintiff was a covered employee under the FMLA because at the time she took her protected medical leave, she had worked for Defendant for more than a year and had worked in excess of 1250 hours during said year.

21. Plaintiff suffered from a serious health condition within the meaning of the FMLA and its implementing regulations. As a consequence of this condition, Plaintiff's physician required Plaintiff to be absent from work for a month due to Plaintiff's medical complications relating to her pregnancy. Plaintiff kept Defendant continuously apprised of her condition and expected return to work date. Plaintiff in fact reported back for work within the 12-week period allowed by the FMLA. Despite this, Defendant unlawfully refused to allow Plaintiff to return to work following her FMLA-qualifying leave event though Plaintiff was fully qualified to return to

work. In fact, by Defendant's own admission, it replaced Plaintiff while she was on protected leave. As such, Defendant unlawfully interfered with Plaintiff's rights under the FMLA.

22. Pleading in addition, and in the alternative, Plaintiff alleges that Defendant unlawfully retaliated against her for taking FMLA-protected leave by terminating Plaintiff from employment even though she was released to return to work and was fully capable of performing her job.[1]

23. Plaintiff has suffered damages as a result of her termination, including lost wages and benefits. Plaintiff also pleads that she is entitled to an aware of liquidated damages because Defendant cannot establish that that it acted in good faith and that it had reasonable grounds for denying Plaintiff reinstatement. Plaintiff also seeks an award of attorney fees because she has had to retain the undersigned to vindicate her legally-protected rights.

**Jury Demand**

24. Plaintiff demands a trial by jury.

**Conclusion and Prayer**

Plaintiff prays that, upon final judgment, she be awarded the following:

    a.    Lost wages and benefits in the past and in the future;

    b.    Unpaid medical expenses;

    c.    Liquidated damages;

    d.    Attorney fees;

---

[1] Plaintiff has separately filed a charge of discrimination under Title VII of the Civil Rights Act and the Pregnancy Discrimination Act, alleging that she was discriminated against because of her pregnancy-related condition. That charge is currently being investigated, and Plaintiff will seek leave to amend this lawsuit to add her claims under Title VII and the PDA once she received a Notice of Right to Sue from the EEOC.

e.  Costs of court;

f.  Post-judgment interest; and

g.  All other relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Michael V. Galo, Jr.*

Michael V. Galo, Jr.
State Bar No. 00790734
GALO LAW FIRM, P.C.
4230 Gardendale, Bldg. 401
San Antonio, Texas 78229
Telephone: 210.616.9800
Facsimile: 210.616.9898
Email: mgalo@galolaw.com
ATTORNEY FOR PLAINTIFF
LAURIE DE LA GARZA